**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**
100 EAST FIFTH STREET, ROOM 532
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO  45202-3988

LEONARD GREEN
CLERK

FILED  JS
US DISTRICT COURT CLERK
WESTERN DISTRICT OF KY

LINDA A. KANTER
(513) 564-7038
www.ca6.uscourts.gov

04 MAR -3  AM 11: 29

Filed: March 2, 2004

Jeffrey A. Apperson
Western District of Kentucky at Louisville
601 W. Broadway
Suite 106 Gene Snyder U.S. Courthouse
Louisville, KY  40202-2249

     RE: 02-5643
       Haeberle vs. Louisville Univ
       District Court No. 01-00044

Dear Mr. Apperson;

    Enclosed is a copy of the mandate filed in this case.  The certified
record was never sent to this Court on appeal.

                              Very truly yours,
                              Leonard Green, Clerk

                              Linda A. Kanter
                              Deputy Clerk

cc: Honorable Jennifer B. Coffman
    Ms. Donna K. Perry
    Mr. Kenneth L. Sales

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

No: 02-5643

Filed: March 2, 2004

CLARENCE BRENT HAEBERLE

Plaintiff - Appellant

v.

UNIVERSITY OF LOUISVILLE; JOHN W. SHUMAKER; JOEL A. KAPLAN, Dr.; CAROL Z. GARRISON; MARIE K. ABRAMS; ULYSSES L. BRIDGEMAN, JR.; LINDA WALLBAUM CAUBLE; ANN FORD COBB; JASON T. FRENCH; NATHANIEL E. GREEN; DENNIS R. HALL; FRANK B. HOWER, JR.; ROSE MARIE LEGE; MILTON M. LIVINGSTON; JESSICA S. LOVING; WILLIAM P. MULLOY, SR.; DARRYL T. OWENS; J. CHESTER PORTER; T. W. SAMUELS, SR.; JOYCE HAGEN SCHIFANO; MELISSA LONG SHUTER; SANDRA METTS SNOWDEN; MARY A. YARMUTH

Defendants - Appellees

### MANDATE

Pursuant to the court's disposition that was filed 2/9/04 the mandate for this case hereby issues today.

A True Copy.

COSTS:   NONE

Attest:

_____
Deputy Clerk

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT
100 EAST FIFTH STREET, ROOM 532
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

LEONARD GREEN
CLERK

FILED : JS :
US DISTRICT COURT CLERK
WESTERN DISTRICT OF KY

MARY PATTERSON
(513) 564-7033
www.ca6.uscourts.gov

04 FEB 10 PM 2:39

Filed: February 9, 2004

Donna K. Perry
Elizabeth N. Monohan
Woodward, Hobson & Fulton
101 S. Fifth Street
Suite 2500 National City Tower
Louisville, KY 40202-3175

Kenneth L. Sales
Sales, Tillman & Walbaum
325 W. Main Street
Suite 1900 Waterfront Plaza
Louisville, KY 40202-4251

RE: 02-5643
Haeberle vs. Louisville Univ
District Court No. 01-00044

Enclosed is a copy of an **amended order** which was entered today
in the above-styled case.

Very truly yours,
Leonard Green, Clerk

Mary Patterson
Case Manager

Enclosure

cc:
Honorable Jennifer B. Coffman
Mr. Jeffrey A. Apperson

INFORMATION COPY
MANDATE NOT YET ISSUED
DIS. CT. # _01-00044_

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**No. 02-5643**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**F I L E D**

FEB 0 9 2004

LEONARD GREEN, Clerk

AMENDED

|  |  |  |
|---|---|---|
| CLARENCE BRENT HAEBERLE, | ) | |
| | ) | |
| *Plaintiff-Appellant,* | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Western |
| UNIVERSITY OF LOUISVILLE, JOHN W. SHUMAKER, JOEL | ) | District of Kentucky |
| A. KAPLAN, CAROL Z. GARRISON, MARIE K. ABRAMS, | ) | |
| ULYSSES L. BRIDGEMAN, JR., ANN FORD COBB, JASON | ) | |
| T. FRENCH, NATHANIEL E. GREEN, DENNIS R. HALL, | | |
| FRANK B. HOWER, JR., ROSE MARIE LEGE, MILTON M. | | |
| LIVINGSTON, JESSICA S. LOVING, WILLIAM P. MULLOY, | | |
| SR., DARRYL T. OWENS, J. CHESTER PORTER, T.W. | | |
| SAMUELS, SR., JOYCE HAGAN SCHIFANO, MELISSA | | |
| LONG SHUTER, SANDRA METTS SNOWDEN, and MARY | | |
| A. YARMUTH, | | |
| | | |
| *Defendants-Appellees.* | | |

NOT RECOMMENDED FOR FULL-TEXT
PUBLICATION
Sixth Circuit Rule 28(g) limits citation to specific situations
Please see Rule 28(g) before citing in a proceeding in a court
in the Sixth Circuit. If cited, a copy must be served on other
parties and the Court.
This notice is to be prominently displayed if this decision
is reproduced.

---

Before:    BOGGS, Chief Judge; GIBBONS, Circuit Judge; GWIN, District Judge.[*]

PER CURIAM.   Plaintiff Clarence Brent Haeberle appeals the district court's grant of

judgment on the pleadings in favor of the defendants, University of Louisville, et al. ("the

University").   In response to an allegedly unlawful denial of his tenure application, Professor

Haeberle had raised a variety of federal and state-law claims against the University.   The district

court granted the University's motion for judgment on the pleadings with respect to the federal

---

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of
Ohio, sitting by designation.

No. 02-5643
Haeberle v. University of Louisville, et al.

claims, finding them to be time-barred under Kentucky's one-year statute of limitations. The district

court then remanded the state common-law claims to the Kentucky state court. The central question

for this panel to determine is when the limitations period began to run. As the pleadings

conclusively demonstrate that Haeberle's cause of action accrued more than a year before he filed

his complaint, we affirm the district court.

I

On July 1, 1987, the University hired Haeberle as a clinical instructor in the Department of

Prosthodontics, which is part of the University's School of Dentistry. On October 1, 1992, Haeberle

became a full-time assistant professor. Like many assistant professors, Haeberle aspired to become

a fully tenured professor. The guidelines for tenure were set out in the University's "Red Book,"

which listed some of the factors that university officials may take into consideration in deciding

whether to grant tenure. Allegedly relying on these guidelines, Haeberle consciously tailored his

professional and scholarly activities to maximize his chances for attaining tenure. These efforts

included publishing several articles and making numerous presentations around both the state and

the nation.

In August 1998, Haeberle submitted his application for tenure. The Dental School's Faculty

Review Committee reviewed the application and recommended that he be granted tenure. The Dean

of the Dental School agreed with the recommendation and forwarded it to Joel Kaplan, the

University's Vice President for Health Affairs. Kaplan disagreed, however, and recommended that

Haeberle be denied tenure because of the inadequacy of his research and publications. Kaplan

forwarded his recommendation to the University's Provost, Carol Garrison. She agreed with Kaplan,

- 2 -

No. 02-5643
Haeberle v. University of Louisville, et al.

and passed her negative recommendation (along with Kaplan's) to University President John Shumaker. Shumaker agreed with their assessment and notified the Board of Trustees that tenure would be denied and that Haeberle's employment would be terminated on March 31, 2000. According to the University's answer to the complaint and its concessions made at oral argument, the Board apparently did not take specific action on President Shumaker's notification that Haeberle would be denied tenure.

The actual date on which the University first informed Haeberle of the tenure denial is unclear.[1]  We do know, however, that Haeberle appealed the President's decision by filing a grievance with the Faculty Grievance Committee. The committee held a hearing on this appeal on September 7, 1999. Thus, the University must have notified Haeberle of the tenure denial *sometime before September 7, 1999*. After its hearing, the Faculty Grievance Committee recommended that the University should reconsider its decision and grant Haeberle tenure.   Despite the recommendation, the Board of Trustees refused to grant tenure and notified Haeberle of this decision on March 1, 2000.

On December 21, 2000, Haeberle filed an action in Kentucky state court. The case was subsequently removed to federal district court upon the University's request. In his initial complaint, Haeberle alleged that the University violated his due process rights under both the Fourteenth

---

[1]In one of the motions filed in the district court, the University attached a letter from Shumaker dated February 22, 1999, which informed Haeberle of the tenure denial. This letter, however, cannot be considered on appeal because it was not part of the original complaint filed by Haeberle. In a motion for judgment on the pleadings, this court may only look at the pleadings themselves and exhibits "incorporated by reference into the complaint." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997); Fed. R. Civ. P. 12(c).

No. 02-5643
Haeberle v. University of Louisville, et al.

Amendment and § 2 of Kentucky Constitution.  He also alleged, under 42 U.S.C. § 1985, that the

defendants conspired to deprive him of his due process rights.  The University filed a motion for

judgment on the pleadings on April 17, 2001.  Haeberle responded by filing an amended complaint

on May 14, 2001 (which was accepted and filed by the district court on August 6, 2001).

In the amended complaint, Haeberle reaffirmed every allegation of the initial complaint.  He

also added a number of new federal claims, including violations of his freedom of association and

equal protection rights.  Specifically, Haeberle alleged that he was punished for associating with

unnamed Dental School officials.  He also claimed that the University violated his equal protection

rights by granting tenure to a woman with equal credentials.  Finally, Haeberle raised tort and

contract claims under state law.

The district court rejected the claims in Haeberle's first complaint on November 5, 2001,

while explicitly reserving judgment on the claims of the amended complaint.  In rejecting the first

complaint, the district court relied on a variety of grounds.  For example, it rejected the § 1983

damages claims (with respect to certain defendants) on the basis of state sovereign immunity.  With

respect to Haeberle's request for injunctive relief pursuant to § 1983 and the state due process claim,

the district court held that Haeberle had no property interest in the grant of tenure absent a state law

or express contract.[2]  The district court also dismissed the § 1985 claim because Haeberle failed to

allege any "class-based discriminatory animus."  All of the claims raised in the first complaint were

dismissed on the merits.

---

[2]This reasoning also applied to Haeberle's claims for money damages against Kaplan,
Garrison, and/or Shumaker in their individual capacities.

- 4 -

No. 02-5643
Haeberle v. University of Louisville, et al.

The district court rejected Haeberle's amended complaint on April 22, 2002. In a shorter opinion, the district court granted the University judgment on the pleadings with respect to all of the federal claims (raised pursuant to § 1983) because they were time-barred by the one-year statute of limitations in Kentucky. The district court declined to grant judgment to the University with respect to the state-law tort and contract claims, choosing instead to remand them back to the Kentucky state court. Haeberle timely appealed the decisions from both of the opinions.

## II

"The standard of review applicable to a motion for judgment on the pleadings under Fed. R. Civ. Pro. 12(c) is the same *de novo* standard applicable to a motion to dismiss under Rule 12(b)(6)." *Ziegler v. IBP Hog Market*, 249 F.3d 509, 511-12 (6th Cir. 2001).

For § 1983 actions originating in Kentucky, this court has held that the applicable statute of limitations is one year. *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990) ("Accordingly, we conclude that section 1983 actions in Kentucky are limited by the one-year statute of limitations found in section 413.140(1)(a)."). The statute of limitations "begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). The only material question in this case is whether Haeberle's federal claims (filed on December 21, 2000) were filed within one year from the time he knew or should have known about the University's decision to deny him tenure. Accordingly, our conclusion depends solely on *when* the cause of action accrued. The University contends that the statute of limitations commenced at some point prior to September 7, 1999, when the Faculty Grievance Committee held its hearing. Appellees' Brief at 15. Haeberle maintains that

- 5 -

No. 02-5643
Haeberle v. University of Louisville, et al.

the appropriate date is March 2000, when the University denied Haeberle's administrative appeals.

Appellant's Brief at 17.

The Supreme Court addressed this very question in *Delaware State College v. Ricks*, 449

U.S. 250 (1980).  In *Ricks*, the Court held that in cases involving tenure denials, courts should apply

the date the plaintiff was notified of the tenure denial, and *not* the date marking the end of the

grievance (i.e., administrative appeal) process.

> We conclude . . . that the limitations period commenced to run when the tenure
> decision was made and [plaintiff] was notified. . . . The grievance procedure, by its
> nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision
> before it is made. . . . [We also conclude] that the pendency of a grievance, or some
> other method of collateral review of an employment decision, does not toll the
> running of the limitations period.

*Id.* at 259, 261 (emphasis in original).  Focusing strictly on the dates provided in Haeberle's

pleading, we know that the University *must* have notified Haeberle prior to the September 7, 1999,

hearing in which Haeberle (by his own words in the complaint) "appealed his denial of tenure."

Complaint, ¶ 31.  Haeberle filed his original complaint on December 21, 2000, more than a year after

the date of the hearing.  Because *Ricks* controls, Haeberle's late filing would normally mark the end

of our discussion.  Haeberle, however, raises several arguments as to why the district court erred in

finding his federal claims to be time-barred.  We address each argument in turn.

- 6 -

No. 02-5643
Haeberle v. University of Louisville, et al.

III

A

First, Haeberle argues that, in granting the University judgment on the pleadings, the district court erroneously considered a letter from President Shumaker that was extrinsic to the pleadings. Specifically, Haeberle claims that the district court made its decision "based upon [the February 1999] letter attached to a Reply Brief filed by Defendants below." Appellant's Brief at 18.  In the letter, dated February 22, 1999, Shumaker informed Haeberle that his application for tenure had been denied.

On a motion for judgment on the pleadings, this court may only look at the pleadings themselves and exhibits "incorporated by reference into the complaint." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997); Fed. R. Civ. P. 12(c).  The letter was clearly not a part of pleadings, nor was it referenced in Haeberle's complaint.

The district court's opinion, however, never mentioned the letter.  In fact, the district court relied specifically on the September date included in Haeberle's complaint to reach its conclusion. ("The plaintiff's complaint reveals that he was notified that the Board of Trustees had denied his application for tenure sometime before September 7, 1999.").  Haeberle's first argument lacks merit.

B

Second, Haeberle avers that this court should apply the March 2000 date because the University's action was not yet final, or alternatively, because the University failed to abide by its internal tenure procedures when it rejected his tenure application.  In making this argument, Haeberle relies on a series of regulations in § 4.1.5(H)(6)-(12) in the Red Book ("Acquisition of Tenure").

- 7 -

No. 02-5643
Haeberle v. University of Louisville, et al.

Essentially, Haeberle contends that the regulations required the Board to make a final decision after

it received the negative recommendation from President Shumaker. Because the Board never acted,

Haeberle claims that the University's action (prior to March 2000) should not be considered "final"

under the applicable Red Book regulations.

Haeberle, however, misreads the Red Book regulations, which read, in part, as follows:

(7) The President shall make the final recommendation concerning tenure for any faculty member whose status is to be acted upon by the Board of Trustees and shall inform the Board concerning the nonrenewal of contract for any faculty member completing the sixth year of service counted toward tenure.

. . .

(9) The Board of Trustees shall take final action to grant tenure after an *affirmative* recommendation by the President. In addition, in any case where the initial recommendation to deny tenure is by the *President*, the Trustees shall decide whether to grant tenure after considering the President's original recommendation, the Report of the Faculty Grievance Committee and the response of the President and the candidate.

. . .

(11) Faculty members not recommended for tenure shall be informed by the President within seven days after the decision has been *reported to* the Board of Trustees.

The first problem with Haeberle's reading of the regulations is that many of them apply *only*

when the *President* makes the initial negative recommendation. In this case, however, *Vice-

President Kaplan* made the initial recommendation. A second problem is that the regulations never

state that the Board must ratify the President's *negative* recommendation when the initial negative

recommendation comes from someone other than the President. Instead, § 9 requires the Board to

act after either an *affirmative* recommendation, or when the initial negative recommendation comes

- 8 -

No. 02-5643
Haeberle v. University of Louisville, et al.

from the President.  If Haeberle's interpretation of the regulations were correct, meaning that all recommendations required Board action, much of the language in § 9 would be superfluous.[3]

In light of the text of the regulations, we find that the Board was not required to act after President's Shumaker's negative recommendation.  Accordingly, the notification by President Shumaker, which happened at some point prior to September 7, 1999, was sufficient to provide Haeberle with notice of his alleged injury.  To hold otherwise would suggest that Haeberle could have remained employed indefinitely so long as the Board never acted, despite the President's negative recommendation.  Thus, even assuming these regulations were part of the pleadings (which is questionable), Haeberle's argument fails.

C

Third, although Haeberle concedes that the statute of limitations question is one of federal law, he contends that the district court should have looked to Kentucky law in order to determine when the University's decision was final.  Appellant's Brief at 22-27.  The argument is that because the University is a "creature of the state of Kentucky," it is therefore "subject to the interpretations of the Kentucky Supreme Court and the Kentucky legislature" with respect to the finality of state entity decisions.  Thus, according to Haeberle, the Kentucky Supreme Court's decision in *Board of Trustees of University of Kentucky v. Hayse*, 782 S.W.2d 609 (Ky. 1989), requires this court to find that the University's actions in 1999 should not be considered final.

---

[3]We note that although § 7 requires the President to offer a recommendation for any candidate "whose status is to be acted upon by the Board," it provides no guidance as to when the Board must act.

No. 02-5643
Haeberle v. University of Louisville, et al.

First, it is not clear that *Hayse* is even relevant to the statute of limitations question.  In *Collard v. Kentucky Board of Nursing*, this court explained that "federal law and not state law is relevant for the purpose of characterizing a section 1983 claim.  Accordingly, federal law governs the question of when that limitations period begins to run." 896 F.2d 179, 183 (6th Cir. 1990) (internal citations omitted) (quoting *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988)).

Even assuming *Hayse* is relevant, it does not support Haeberle's position.  In *Hayse*, a professor at the University of Kentucky applied for tenure during the 1976-77 academic year, but the school rejected his application.  782 S.W.2d at 611.  The professor then signed a contract, in February 1977, that provided him with a one-year "terminal appointment."  *Id.* at 611, 613.  The professor filed a second application for tenure the next academic year, but the university rejected his application in May 1978. The Kentucky Supreme Court had to decide when the statute of limitations period began.  The court held that the professor's cause of action accrued in May 1978, and not February 1977.  *Id.* at 613.

It is not completely clear how Haeberle thinks *Hayse* should be applied in this case.  On the one hand, Haeberle might be suggesting that *Hayse* stands for the proposition that no action by a Kentucky university is final until the Board of Trustees acts in accordance with proper regulations. In *Hayse*, however, the Kentucky Supreme Court merely repeated a lower court's finding that, under the University of Kentucky's regulations, the Board of Trustees had final authority "to approve or disapprove" an application for tenure.  *Id.* at 611.  It did *not* declare a general rule that all decisions regarding tenure by all Kentucky universities must come from their Boards of Trustees.  If anything,

- 10 -

No. 02-5643
Haeberle v. University of Louisville, et al.

*Hayse* undermines Haeberle's position. The *Hayse* court ultimately found that the plaintiff's cause

of action accrued on May 5, 1978 (the date of the second tenure denial), even though the Board of

Trustees had not acted upon his application for tenure. *Id.* at 612, 613. Regardless, unlike the

University of Kentucky's regulations in *Hayse*, the University of Louisville's regulations did *not*

require the Board to act on negative recommendations.

Alternatively, Haeberle might be citing *Hayse* for the more limited proposition that a

university's action must be final before a plaintiff can possibly have notice of the act that initiates

the limitations period. Even assuming Haeberle's reading is correct, we have already concluded that

the President's negative recommendation represented a final decision for purposes of determining

when Haeberle's cause of action accrued.

### D

Fourth, Haeberle suggests that the district never overruled its earlier opinion in its second

opinion. Presumably, the argument is that because the first opinion dismissed the federal claims on

reasons not related to the statute of limitations, and because the second opinion did not clearly

overrule the first opinion, this court should review those federal claims that were not explicitly

dismissed as untimely. Because we find that our reasoning is equally applicable to the federal claims

dismissed in the November 5, 2001 order, we do not need to discuss the bases on which the district

court relied in its November 5 order.

No. 02-5643
Haeberle v. University of Louisville, et al.

E

Finally, there has been considerable confusion as to whether the Board responded in any way to Shumaker's negative recommendation in 1999.[4] The University's position has been extremely contradictory and unclear on this question. For example, in some of its filings in the district court, the University seemed to claim that the Board did act upon Shumaker's recommendation.[5] Likewise, in its brief to this court, the University seemed to suggest that the Board had acted upon Shumaker's recommendation in 1999. Appellant's Brief at 7-8. Yet, in its initial answer to the complaint, the University denied Haeberle's allegation that the Board rejected his tenure request in 1999. *Compare* J.A. 22 (¶¶ 30-31) *with* J.A. 40 (¶¶ 35, 37). In addition, the University, in a different section of its brief to this court, explained that in situations where the President does not make the initial negative recommendation, "[t]he Board of Trustees takes no action." Appellant's Brief at 17.

Despite the University's lack of clarity, Haeberle's claims are time-barred. If the Board did in fact act in 1999, then Haeberle's claims are clearly time-barred. Even if the Board did not act in 1999, we still conclude (for reasons stated above) that the President's recommendation constituted a final decision in light of the language of the University's regulations. We emphasize, however, that we find the President's decision to be "final" only for purposes of determining the proper statute

---

[4]Haeberle conceded that the Board notified him in March 2000 that it had rejected the recommendation of the Faculty Grievance Committee and denied him tenure. Appellant's Brief at 10-12.

[5]Haeberle, however, denied that the Board had acted, as it was allegedly required to do under Red Book regulations.

No. 02-5643
Haeberle v. University of Louisville, et al.

of limitations period for Haeberle's § 1983 claims.  We express no opinion on the issue of finality

with respect to the state law questions.

IV

For the reasons set forth above, the judgment of the district court is AFFIRMED.  The

plaintiff's federal claims will be DISMISSED and the two remaining state-law tort and contract

claims raised in the amended complaint will be REMANDED to the state court.

No. 02-5643
Haeberle v. University of Louisville, et al.

JULIA SMITH GIBBONS, Circuit Judge, concurring. I concur in Judge Boggs's opinion and agree that, based on *Ricks*, the one-year Kentucky statute of limitations bars Haeberle's federal claims. I write separately to note my understanding of the proper record before us and its effect on the result.

With regard to the record, the portions of the Red Book referred to in Part III.B of Judge Boggs's opinion are not a part of the pleadings. The only portions of the Red Book found in the pleadings are those relating to criteria for tenure decisions, which are attached to plaintiff's original complaint. It is thus difficult for me to see how the remainder of the Red Book can be considered incorporated by reference into the pleadings, and in my judgment it is not a proper part of the record. In any event, however, the Red Book provisions and their interpretation are not pertinent to the result. In fact, Judge Boggs's opinion (which recognizes that these Red Book provisions may not be part of the pleadings) does not rest on an interpretation of the Red Book, but mentions the Red Book only in explaining why Haeberle's argument concerning its provisions lacks merit.

The key to this case is not the Red Book or the precise procedure followed by the University or whether the President's recommendation was a final decision. Rather, the result is determined by the undisputed facts that on September 7, 1999, the Faculty Grievance Committee held a hearing regarding the recommendation that Haeberle be denied tenure and that Haeberle was aware of the recommendation before that date. Under *Ricks*, it makes no difference whether we characterize this proceeding before the Faculty Grievance Committee as an appeal of a denial of tenure, as plaintiff does in his complaints, or as pursuit of a grievance, which is the language used by defendants in their answers. Under either description, plaintiff was pursuing the administrative process for obtaining

- 14 -

No. 02-5643
*Haeberle v. University of Louisville, et al.*

a tenure decision that differed from that recommended by university administrators and communicated to Haeberle prior to September 7, 1999. He was clearly seeking review of a non-tentative decision (whether called a recommendation or something else) rather than trying to influence initial decision-making about whether he should receive tenure. *See Ricks*, 449 U.S. at 261.

In addition, the conclusion that Haeberle's federal claims are time-barred is reinforced by the fact that Haeberle's complaints allege federal constitutional violations based on the university administrators' recommendation, not any later decision-making by the Board or other individuals or entities. J.A. at 22-24, 79. Thus, the focus of the limitations inquiry on the federal claims must be the date when Haeberle learned of the allegedly unconstitutional acts, not the date when he learned of some other action. *See Ricks*, 449 U.S. at 258 & n.9; *cf. Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (stating that the limitations inquiry must focus on the timing of the acts alleged to be illegal and not subsequent acts); *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1059 (9th Cir. 2002) (same); *Taylor v. Gen. Motors Corp.*, 826 F.2d 452, 456 (6th Cir. 1987) (same).

*No. 02-5643*
*Haeberle v. University of Louisville, et al.*

JAMES S. GWIN, United States District Judge, concurring in part and dissenting in part.

Respectfully, I concur, in part, and I dissent, in part. As described below, I believe the Court reaches the correct result regarding Haeberle's due process and First Amendment claims, although not because he failed to file this action within the statute of limitations. Instead, I find that he fails to show a protected interest in continued employment. With regard to the Court's discussion of the application of the statute of limitations to Haeberle's claims, I believe the Court's opinion is wrong regarding two important issues. First, in a case that was thrown out before the parties started discovery, the majority opinion misapplies the law applicable to motions for judgments on the pleadings under Rule 12(c). Second, it applies the wrong accrual rule for § 1983 claims. I explain my reasons below.

### Rule 12(c) Standard

Traditionally, courts have notably hesitated to grant motions for judgment on the pleadings. 5A Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1368, at 517 n.1 (1990). For good reason, too; Rule 12(c) carries a difficult standard for moving parties to meet. 5A Wright & Miller, *Federal Practice & Procedure 2d* § 1368, at 705-06 (2003 Supp.).

Courts apply the same analysis to motions for judgment on the pleadings under Rule 12(c) as they apply to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). When faced with a defendant's motion for judgment on the pleadings, a district court must "construe the complaint in the light most favorable to the plaintiff [and] accept all of the complaint's factual allegations as true." *Id.* (citations omitted); *see also Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999).

- 16 -

No. 02-5643
*Haeberle v. University of Louisville, et al.*

The district court may grant the defendant's motion for judgment on the pleadings only if "the plaintiff *undoubtedly* can prove *no set of facts* in support of the claims that would entitle relief." *J.H. Routh Packing Co.*, 246 F.3d at 851 (citations omitted) (emphasis added). If any issue of material fact cannot be resolved on the pleadings, judgment on the pleadings is improper. *Faibisch v. Univ. of Minn.,* 304 F.3d 797, 803 (8th Cir. 2002); *Smith v. Check-N-Go of Ill., Inc.,* 200 F.3d 511, 514 (7th Cir. 1999). Therefore, a "defendant will not succeed on a motion under Rule 12(c) if there are allegations in plaintiff's pleadings that, if proved, would permit recovery." 5A Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1368, at 527-28 (1990). The same standard applies to this Court, as we apply the *de novo* standard of review to district courts' decisions on motions for judgment on the pleadings. *J.H. Routh Packing Co.*, 246 F.3d at 851.

The majority omits the substance of this standard. Instead, it states only that in reviewing a decision on a Rule 12(c) motion, we apply "the same *de novo* standard applicable to a motion to dismiss under Rule 12(b)(6)," and that a court "may only look at the pleadings themselves and exhibits 'incorporated by reference into the complaint.'" *Supra* (citing *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)). The majority ignores the requirement that a party moving for judgement upon the pleadings needs to show the plaintiff "undoubtedly can prove no set of facts in support of the claims that would entitle relief." *J.H. Routh Packing Co.*, 246 F.3d at 851. But more important than the majority's discussion of the Rule 12(c) standard, I disagree with the majority's application of the Rule 12(c) standard to the facts of this case.

- 17 -

No. 02-5643
Haeberle v. University of Louisville, et al.

### § 1983 Accrual

Causes of action filed under 42 U.S.C. § 1983 accrue when the plaintiff knows or has reason to know of the injury which is the basis of the § 1983 action. *Dixon v. Anderson,* 928 F.2d. 212, 215 (6th Cir. 1991) (citing *Sevier v. Turner,* 742 F.2d 262, 272 (6th Cir. 1984)); *see also Gentry v. Resolution Trust Corp.,* 937 F.2d 899, 919 (3d Cir. 1991). Here, Haeberle alleges that the University improperly denied him tenure. Therefore, his action accrued on the date when he knew or should have known that the University denied his request for tenure.

The majority concludes that because the University held a hearing regarding a negative tenure decision on September 7, 1999, Haeberle's claim must have accrued by that time. To reach this conclusion, the majority states that regardless of the labels attached to both the decision that prompted the hearing and the hearing itself, Haeberle knew that a constitutional right had been violated and that it was time to go to court to protect his rights. I cannot agree with this analysis.

Haeberle would not know that a constitutional violation occurred until the University rendered a decision that put him on notice that it decided the tenure issue. For this reason, the label placed upon the decision that prompted the grievance procedure is crucial. If in September 1999, Haeberle appealed a negative *recommendation*, then clearly he would not be under the impression that his rights had already been violated and that the time to rush to the courthouse had arrived. That is not the case if in September 1999, he appealed a negative *determination*. A determination is tantamount to an action; a recommendation is not. In other words, recommending that someone violate the Constitution is not sufficient to constitute a violation; only undertaking an action that violates the Constitution causes the action to accrue. Further, what we're really interested in is the

- 18 -

No. 02-5643
*Haeberle v. University of Louisville, et al.*

time at which someone *should have reasonably known* of a constitutional violation, which is all the

more reason that a recommendation is insufficient.

    Looking solely at the pleadings, as I must at this stage,[1] I cannot tell what Haeberle appealed

in September 1999. Haeberle's complaint does state that he "appealed his denial of tenure" at the

September 7, 1999 grievance hearing. (J.A. at 22, ¶ 31). However, the University's answer denies

this allegation, admitting only that the grievance committee held a hearing. (J.A. at 40, ¶ 37). The

University further states that the Grievance Committee recommended that the defendants "reconsider

their decision not to *recommend* promotion and tenure." (J.A. at 40, ¶ 38) (emphasis added). This

---

[1]When reviewing a motion for judgment on the pleadings, a court may only look at the pleadings themselves and exhibits incorporated by reference into the complaint. *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (internal quotations omitted). The University's manual for tenure applicants--the "Red Book"--is not incorporated into the complaint. Instead, it was offered as an exhibit attached to the Plaintiffs' response in opposition to the defendants' motion for judgment on the pleadings. (J.A. at 58-75). For this reason, the Red Book is not part of the record, and it should not be considered or discussed in our disposition of the case.

    Even if the Red Book were properly before the Court, however, I would still conclude that dismissing Haeberle's claims for violating the statute of limitations was in error. As I read the Red Book's contents, no decision on a tenure application is complete until the Board acts upon it. The only provision that allows a University President to deny a professor's application for tenure is paragraph 10, which applies only when the applicant resigns from his position before the Board can act. J.A. at 75. Nor do I see any logic in reading this policy to require Board action only when the President recommends granting tenure or is the first to recommend denying tenure. Such a reading would leave applicants such as Haeberle in a state of limbo. Further, such a reading turns the policy's language into doublespeak by permitting a negative *recommendation* to automatically transform into a *denial*. If a negative recommendation from the President really is a denial, why go through the charade of calling it a "recommendation"?

    Additionally, Kentucky law supports this reading of the Red Book. Kentucky Rev. Stat. § 164.821(1) vests authority to govern the University of Louisville in the Board of Trustees. The Board's powers include "[a]ppointment of . . . all faculty members," K.R.S. § 164.830(1)(a), and "removal of . . . faculty," K.R.S. § 164.830(1)(b). Nowhere is there any mention of a University president's power to appoint or remove faculty members, nor is there any mention of the Board's authority to delegate these tasks.

- 19 -

No. 02-5643
*Haeberle v. University of Louisville, et al.*

latter statement explicitly denies that the Grievance Committee reviewed any final decision or any

action of the Board. Currently, the parties dispute the critical issue--whether Haeberle appealed a

denial of tenure or a recommendation to deny tenure in September 1999.[2] Without knowing the

answer to this issue, it is impossible to know whether Haeberle should have known that it was time

to go to court to protect his rights. And therefore, it is inaccurate to conclude that Haeberle could

prove no set of facts that would entitle him to relief.

Alternatively, the majority says that Haeberle's claim must have accrued by September 1999

because Haeberle pursued a grievance procedure. It further states that as a matter of law, grievance

procedures are not part of the tenure review process, but rather administrative procedures that can

be invoked only after a final decision. In support of this proposition, it cites *Delaware State College*

*v. Ricks*, 449 U.S. 250, 101 S. Ct. 498 (1980). *Ricks'* holding, however, is far more limited, as the

*Ricks* Court analyzed the grievance procedure *in that case* and did not create a blanket rule to apply

to all grievance procedures in all cases.[3] *Ricks* involved a situation in which a university's Board

of Trustees denied tenure to a professor, who then sought review of this decision through a grievance

--------

[2]Unfortunately, the majority sloughs over this critical point of contention by stating, "We do know, however, that Haeberle appealed the President's *decision* by filing a grievance with the Faculty Grievance Committee" (emphasis added). Indeed, the pleadings contain sufficient evidence that Haeberle appealed only a negative tenure recommendation from the President, as opposed to a final tenure decision, to create a genuine issue of material fact.

[3]Indeed, the language from *Ricks* that the majority quotes supports this conclusion. It states, "The grievance procedure, by its nature, is a *remedy* for a prior decision . . . ." *Ricks*, 449 U.S. at 261, 101 S. Ct. at 506. If the Supreme Court meant to speak generally about grievance procedures, as opposed to specifically about the particular grievance procedure at issue, then this passage would have read, "Grievance procedures, by their very nature, are remedies for prior decisions . . . ."

*No. 02-5643*
*Haeberle v. University of Louisville, et al.*

process. The Court faced the issue of when the professor's claim accrued under 42 U.S.C. § 1981,

which carries the same accrual standard as § 1983. It concluded that the limitations period

commenced "when the tenure decision was made and Ricks was notified." *Id.* at 259, 101 S. Ct. at

504. Its greater challenge, however, was to identify that date. One alternative the Court considered

was the termination of the grievance procedure. Rejecting that date, the Court noted "that the Board

of Trustees had made clear well before September 12 [the date the grievance procedure ended] that

it had *formally* rejected Ricks' tenure bid. The June 26 letter [from the Board of Trustees to the

professor] characterized itself as *the Board's 'official position.'*" *Id.* at 261, 101 S. Ct. at 505

(emphasis added).

The *Ricks* Court's analysis repeatedly emphasizes that the Board of Trustees already had

voted formally to deny tenure to the plaintiff before the grievance process commenced. *Id.* at 252,

101 S. Ct. at 501; *id.* at 261, 101 S. Ct. at 505; *id.* at 262, 101 S. Ct. at 506. In other words, *Ricks*

involved a grievance procedure that challenged the Board's final decision. Therefore, this case is

similar to *Ricks* only if Haeberle's grievance followed a clear decision to deny tenure by the

University official or body given authority to make the decision. And as I explained above, the

record is simply too opaque on this point for the Court to make such a determination.

In sum, the poor state of the record prevents me from concluding that there was no issue of

material fact (as required by Rule 12(c)) regarding either (1) when Haeberle was denied tenure, or

(2) when Haeberle knew or should have known that he had been denied tenure. Further, the

disparate stories the parties' pleadings tell regarding what exactly Haeberle appealed in the grievance

process suffice to create a genuine issue of material fact regarding when Haeberle knew or should

- 21 -

No. 02-5643
*Haeberle v. University of Louisville, et al.*

have known of the denial.  For these reasons, I think that the majority applied the wrong standards

with regard to both appellate review of a motion for judgment on the pleadings and accrual of a §

1983 action.

The district court should not have granted judgment on the pleadings unless it could conclude

that Haeberle could prove no set of facts that would entitle him to judgment.  As a prerequisite to

that conclusion, the district court would have to find that there was no issue of material fact whether

Haeberle should have known prior to December 1999 that he had been denied tenure.  In a case

involving such an underdeveloped record, I do not think it is reasonable for the district court to so

conclude.

Under Rule 12(c), district courts should not dispose of cases unless the plaintiff undoubtedly

can prove no set of facts in support of the claims that would entitle relief.  Given the ambiguity of

the University's policies and the poor shape of the record, judgment on the pleadings on the statute

of limitations was inappropriate.  I respectfully dissent from the majority's ruling to the extent that

it holds that Haeberle failed to file his claims within the applicable statute of limitations.

### The Merits of Haeberle's Federal Claims

That said, I agree with the majority's disposition with regard to most of Haeberle's claims,

but I do so on their merits (or lack thereof) rather than on the statute of limitations.  Before the court

are three federal claims: alleged violations of procedural due process, the First Amendment, and

equal protection.  I discuss each of these in turn.

The district court concluded in its first order granting judgment on the pleadings that the

University was entitled to judgment on Haeberle's federal due process claim, reasoning that Haeberle

- 22 -

No. 02-5643
*Haeberle v. University of Louisville, et al.*

lacked a cognizable property interest in his job. J.A. at 112.  I agree with the district court's disposition of this issue, and would thus grant the University's motion for judgment on the pleadings with regard to Haeberle's federal due process claim.

A prerequisite for establishing a due process violation is that the plaintiff establish deprivation of a liberty or property interest.  Here, Haeberle asserts that he possessed a property interest in his position with the University.  The district court correctly concluded that Haeberle lacked a property interest in his job.

Courts look to state substantive law to determine property interests.  *See Paul v. Davis*, 424 U.S. 693, 710 (1976) (stating that property interests protected by the Due Process Clause "attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law").

Kentucky law recognizes no property interest in continued employment for plaintiffs in Haeberle's position.  *Ashley v. University of Louisville* involved a similar factual scenario–a professor who was denied tenure and then sued, alleging a denial of due process.  723 S.W.2d 866 (Ky. Ct. App. 1986).  The court found that because plaintiff had "neither contract nor tenure" he "had no cause of action."  *Id.* at 868.  The implication of this statement is that the plaintiff could not demonstrate a property interest in his job because he did not have tenure or a binding contract and, therefore, plaintiff failed to state a due process cause of action.  Because Haeberle similarly lacked tenure or a binding contract, he did not have an interest in his job sufficient for him to state a cause of action for a denial of due process.  For these reasons, I conclude that the district court properly dismissed Haeberle's federal due process claim.

- 23 -

No. 02-5643
*Haeberle v. University of Louisville, et al.*

Haeberle also asserts a violation of the First Amendment's guarantee of free association. In his Second Amended Complaint, he says that he "has been punished for exercising his lawful right of association under the First Amendment of the U.S. Constitution by following of the standards set by the University . . . for his attainment of tenure, and associating with the officials therein." J.A. at 80-81. The district court did not address this claim on the merits.

Haeberle is correct that the First Amendment confers associational rights. Regardless, his allegations do not provide a basis for finding a violation of these rights. The Supreme Court has recognized the right to associate "for the purpose of engaging in those activities protected by the First Amendment--speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. U.S. Jaycees* , 468 U.S. 609, 618 (1984). Haeberle fails to allege that he sought to associate with Dental School officials for any these protected purposes. He further fails to explain how the University's denial of tenure prevented him from associating with Dental School officials. For these reasons, I would therefore dismiss this claim as well.

Finally, Haeberle alleges that the University deprived him of equal protection of the laws by its alleged "unequal application of standards to Haeberle as opposed to others seeking tenure at the University who preceded him." Confusing use of prepositional phrases and independent clauses notwithstanding, I conclude that this allegation states a plausible equal protection cause of action under *Village of Willowbrook v. Olech,* 528 U.S. 562 (2000). There, the Supreme Court held that claimants need not assert membership in a protected class to establish a cause of action for an equal protection violation. Instead, they may establish a claim as a "class of one" by alleging differential treatment from others similarly situated where there is no rational basis for the difference. *Id* at 564.

- 24 -

No. 02-5643
*Haeberle v. University of Louisville, et al.*

Haeberle's Second Amended Complaint identifies an allegedly similarly situated ("virtually identical," says Haeberle) professor who received tenure. Although the complaint does not use the magic words "no rational basis for the difference," its substance conveys the same notion--that standards meant to be applied evenly were not and the decision-makers failed to justify their actions. For these reasons, I would allow this claim to survive the motion for judgment on the pleadings.

### State Due Process Claim

The final issue the Court must address is whether we should remand Haeberle's due process claim under § 2 of the Kentucky Constitution. Because I conclude that the district court properly dismissed this claim in its first order granting judgment on the pleadings, I agree with the majority that we should not remand it to the district court.

Section 2 of the Kentucky Constitution states in full: "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority." The Kentucky Supreme Court has made clear that "Section 2 of the Kentucky Constitution is that part of our constitution which guarantees due process of law to our citizens." *Remote Servs. v. FDR Corp.*, 764 S.W.2d 80, 82 (Ky. 1989); *see also Commonwealth v. Reneer*, 734 S.W.2d 794, 804 (Ky. 1987) ("The Bill of Rights in our Kentucky constitution, § 2, guarantees citizens of the State of Kentucky procedural due process . . . .").

Kentucky courts have reviewed statutes for substantive due process under Section 2 similarly to how federal courts have applied the Fifth and Fourteenth Amendments' Due Process Clauses. *See, e.g., Pigeons' Roost, Inc. v. Commonwealth*, 10 S.W.3d 133, 135 (Ky. App. 1999) (noting that the same standard applies in § 2 cases as in federal Fourteenth Amendment due process cases).

- 25 -

*No. 02-5643*
*Haeberle v. University of Louisville, et al.*

Kentucky courts have also used § 2 to review administrative agencies' actions to ensure compliance with procedural due process. *See Shockey Tours, Inc. v. Miller Transp., Inc.,* 984 S.W.2d 95, 98 (Ky. 1998) ("Any parties whose rights are affected by the action of an administrative agency is entitled to due process in compliance with Section 2[.]"). In a case considering procedural due process claims presented under both § 2 and the Fourteenth Amendment, the Kentucky Supreme Court employed principles of federal due process jurisprudence to resolve both claims. *See Transp. Cabinet v. Cassity,* 912 S.W.2d 48, 51 (Ky 1996). Hence, *Cassity* suggests that the procedural due process analysis under Kentucky law is analogous to the procedural due process analysis under federal law.

As I explained above, Haeberle lacked a property interest in his job and could not state a valid due process claim. I conclude that the district court properly dismissed Haeberle's § 2 claim and therefore join the majority's conclusion that our remand order applies only to the contract and tort claims Haeberle asserts in his Second Amended Complaint.